ST. JOHN ET AL.
*vs.*
SANDERSON ;
COCHRAN INTER-
VENOR.

## ST. JOHN ET AL. *vs.* SANDERSON ; COCHRAN INTERVENOR.

### APPEAL FROM THE COMMERCIAL COURT OF NEW-ORLEANS.

Where a stock of goods are shown to have been purchased on the credit of a third party, under false and fraudulent pretences of the defendant, and the former takes them into his possession, with a view to sell them and take up his drafts and acceptances given for the price, he will hold them against an attaching creditor of the defendant.

A party suffering from the fraud of another is entitled to relief; and where fraud would vitiate a contract of sale of goods, as between the original parties, a third party on whose credit they were purchased, and who assumed payment, should not be made the victim of the fraudulent acts of the purchaser.

The same relief will be extended to an innocent party, who has become responsible for the contracts of another, by accepting his drafts and giving him his credit, as to a surety, who even before payment may demand to be indemnified by the principal debtor, when the latter is in a state of insolvency.

This is an action against the maker of three promissory notes, payable to the order of the plaintiffs. The defendant resides in Texas, and an attachment was obtained against

the cargo of the schooner Oregon, about to sail for that country, consisting of four hundred and ninety-nine barrels of lime, eighteen boxes marked for Houston, (Texas,) and two trunks, as the property of Sanderson. Several creditors' intervened, and among them A. G. Cochran, who alleges, that the whole of the goods and property attached were purchased for cash advanced by him, or on his faith and credit for drafts accepted by him ; that he was induced to make said purchases by fraudulent and deceitful representations of the defendant. That he has since ascertained from his correspondent in Texas, that defendant was bankrupt and in bad credit, and procured from him a transfer of all the goods and property on board said schooner, and a surrender of all the dray receipts, bills of lading, and all the evidence of title to them, of every kind ; that he engaged an agent to take charge of the cargo and go out with it to Texas, and there sell it, to procure the means of taking up the acceptances and cash payments advanced on the original purchases. That after these arrangements were made, viz : on the 9th January, 1840, the whole property was attached, and has been taken into the custody of the sheriff at the suit of the plaintiff. He prays that the property attached be delivered up to him, having superior claims to those of the plaintiff.

Upon this intervention and opposition to the plaintiffs' demand, the whole case turned and was tried.

The evidence seemed to be conclusive in establishing the fraudulent purchase of the goods attached, and that the intervenor was induced, through the fraudulent representations of the defendant, to make advances, and became bound for the whole of the purchases ; and that he had taken the necessary steps to secure himself, by the transfer of the goods, and this too, before the attachment was levied.

The plaintiffs had judgment against the defendant, for the amount of their debt ; but the goods and property attached were ordered to be delivered up to the intervenor. The plaintiffs appealed.

EASTERN DIST.
*April,* 1840.

ST. JOHN ET AL.
*vs.*
SANDERSON;
COCHRAN INTERVENOR.

EASTERN DIST.
*May,* 1840.

ST. JOHN ET AL.
*vs.*
SANDERSON;
COCHRAN INTER-
VENOR.

*I. W. Smith,* for the plaintiffs, contended :

The defendant having, by the aid of the intervenor, purchased the goods in question, endeavored, by a subsequent arrangement, to get possession of them, and secure the amount for which he had obligated himself. This subsequent arrangement was not a sale, for no *price* was stipulated. It was not a *pledge,* for there was no notarial act. The right of property remained in the defendant, and the attachment was properly levied on the goods.

2. The intervenor charges, that the defendant obtained the goods under fraudulent pretences. The evidence shows that the goods were obtained by the aid of the intervenor's name. This was furnished. If there was bad faith on the part of the defendant towards the intervenor, that could not affect the validity of the sale to the defendant, as to attaching creditors. If there were any fraud, the objection could only be taken by the vendors of the goods. It comes with bad grace from one whose name has enabled the defendant to purchase the goods, and thus hold himself out to the world as the owner of property.

3. When the intervenor has paid the bills accepted by him for the goods, it will be in time to examine his claim of privilege as co-obligor of defendant.

*E. A. Bradford,* for the intervenor and appellee.

The testimony establishes that H. Sanderson obtained the goods attached in this suit, on " fraudulent pretences." His contract for the goods, therefore, was void *ab initio.* It was not translative of property. He acquired under it, only the naked possession of the goods, which gave no right to his creditors to attach them in his hands. 2 *Louisiana Reports,* 514 ; 3 *idem.,* 282 ; 9 *idem.,* 436 ; 3 *Johnson,* 235 ; 8 *Cowen's Reports,* 238 ; 2 *Mason's Reports,* 239 ; 4 *idem.,* 289.

2. Every party who suffers by the fraud of another, is entitled to be relieved against it, and the mode in which the relief shall be extended, will be adapted to the necessities of the particular case.

EASTERN DIST.
May, 1840.

ST. JOHN ET AL.
vs.
SANDERSON;
COCHRAN INTER-
VENOR.

The courts of Louisiana have the same powers as a court of equity, and administer law and equity "*pari passu.*" *New Orleans Building Company* vs. *Lawson*, 11 *Louisiana Reports*, 34. They are bound, therefore, to no prescribed forms of relief, but will vary their decrees to meet the very form and pressure of each particular case in all its complex habitude. *Story on Equity*, 419, 420.

3. The vendors of Sanderson received the acceptances of Mr. Cochran in payment, and rely on them as payment.

By the *Louisiana Code, article* 2157, subrogation takes place of right for the benefit of him, who being bound with others, or for others, for the payment of a debt, had an interest in paying it. This legal subrogation is as extensive, as express subrogation could be ; and authorizes the surety to use every right of the creditor, to the fullest extent. 2 *Martin, N. S.*, 159 ; 1 *Louisiana Reports*, 400 ; 6 *idem.*, 479.

4. Mr. Cochran, therefore, is legally subrogated to all the rights of those vendors of Sanderson, who have received and treated his acceptances as payment, and may use every means which they could have used, for security. 4 *Louisiana Reports*, 222.

5. The testimony shows further, that before the attachment in the case was levied, Mr. Cochran, having been warned against the frauds of Sanderson, had taken these goods into his own possession and appointed an agent to proceed with them to Texas, where he was to deliver them to Sanderson, if satisfied with the securities he could give, otherwise, he was to sell them on Mr. Cochran's own account, and remit to him the entire proceeds. This arrangement was made with the full knowledge and consent of Sanderson.

What interest, then, had Sanderson in these goods, at the time the attachment was levied ?

An attaching creditor must show either possession or title in his debtor, and when a third person has the possession, he must show that his debtor had the title. *Taylor* vs. *Page et al.*, 8 *Louisiana Reports*, 135.

Eastern Dist.
May, 1840.

ST. JOHN ET AL.
vs.
SANDERSON;
COCHRAN INTER-
VENOR.

*Simon, J.*, delivered the opinion of the court.

This is a case upon attachment. Plaintiffs sue to recover the amount of three promissory notes alleged to be due them by defendant; and a writ of attachment having been issued, the sheriff proceeded to attach a certain quantity of goods which had been previously shipped on board the schooner Oregon. Several creditors of the defendant intervened, and among them, A. G. Cochran, who alleges in his petition that the goods attached were purchased on his sole credit, that they were paid for in money and drafts advanced by him, and that the purchases were made in consequence of the fraudulent and deceitful representations of the defendant, who stated to intervenor that he was in good credit and doing a prosperous business in Texas, and who promised to pledge with the intervenor notes and titles to land in Texas, as collateral security, &c. He further states that a short time afterwards, having been apprized of the true circumstances of the defendant, a further arrangement took place between him and the intervenor, in consequence of which, defendant assigned and transferred over to him his title to the stock of goods then on board of the schooner Oregon, in consideration of the acceptances and liabilities which he was under for their purchase; that the goods were accordingly delivered to the intervenor, who put them in charge of his agent, and that, new bills of lading having been drawn up, his said agent was about going to Texas to dispose of the goods on the intervenor's account, and to remit the proceeds to meet the acceptances and liabilities of the intervenor, when said goods were attached at the suit of plaintiffs. He also avers, that the defendant never had the possession of the stock of goods, and that the same are not liable to the attachment sued out by plaintiffs.

*Where a stock of goods are shown to have been purchased on the credit of a third party, under false and fraudulent pretences of the defendant, and the former takes them into possession, with a view to sell them and take up his drafts and acceptances given for the price, he will hold them against an attaching creditor of the defendant.*

There was judgment in the court below in favor of the intervenor, and the plaintiffs appealed.

A careful examination of the evidence has convinced us that the goods attached were obtained by Sanderson on false and fraudulent pretences, and that they were purchased *on* the sole credit of the intervenor. It was also proven that a few

days before the attachment was levied, the goods had been put in the possession of the intervenor ; that they were to be transported to Texas, on his own account, and that he had a right to consider himself the owner of those goods, at least for the purpose of providing, out of their proceeds, for the payment of the acceptances and liabilities which he had assumed.

In this situation, we think the intervenor, who is suffering by the fraud of another, is entitled to relief. If the original vendor of the goods were the claimants in this suit, there is no doubt of their being entitled to recover, as the contract for the sale of these goods would be vitiated by the fraud, and we are unable to perceive why the intervenor, on whose credit they were bought, and who, having assumed their payment, may perhaps be said to be subrogated to the right of the sellers, should be made the victim of the fraudulent acts of the defendant. It is clear that the acceptances of the intervenor were received in payment ; he is, therefore, bound for another, and had an interest in discharging the obligations. *Louisiana Code, article* 2157, *section* 3. It is true that there is no evidence of the acceptances having been paid, but the discovery of the defendant's insolvency having been the cause of the delivery of the goods to the intervenor, this absence of proof of payment, ought not, in our opinion, to lessen his right of recovery ; and under the circumstances of the case, we feel bound to extend towards the intervenor, the relief granted by law to a surety, who, even before making any payment, may demand to be indemnified by the principal debtor, when said debtor is in a state of insolvency. *Louisiana Code, article* 3026, *section* 2.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Commercial Court be affirmed, with costs.